Whyte, J.
dissenting. The errors assigned are, 1st, That the court below ought to have allowed the defendant Goddard a jury trial: 2d. That the court ought to have had the mother of the illegitimate child sworn in open court, and not had her testimony substituted by affidavit: 3d. Other errors appearing on the record.
These errors are predicated upon the non-observance by the court below, of tjie provisions of the act of Assembly of 1822, ch. 29, sec. 1, which is in these words: “ Be it enacted, That when any single woman shall accuse any man of being the father of a bastard child or children, begotten of her body, such person so accused, shall file his affidavit, clearly setting forth that justice requires an issue to be made to try the truth of such charge; whereupon it shall be the duty of the court in which such charge may be pending, to hear proof and determine the matter as to right and justice may appertain.”
Whether there is error upon this record, depends upon this act, and what is its true construction. It is to be observed, that previous to the passage of this act, the filiation of illegitimate children in the case of single women, rested solely upon the provisions of the act of 1741, ch. 14.; which enacted, that when such woman shall accuse upon oath before two Justices, any man of being the father, &c. the person so accused shall be adjudged the reputed father of such child, and stand charged with the maintenance of the same, as the county court shall or der, &c.
The act of 1822, ch. 29, recognizes and adopts the same course of filiation, subject to an amendment or vari *101 ation, introduced by the two last clauses of the section above cited, in the following words: « unless such person so accused shall file his affidavit, clearly setting forth that justice requires an issue to be made to try the truth of such charge; whereupon it shall be the duty of the court in which such charge may be pending, to hear proof and determine the matter as to right and justice may appertain.” The meaning of the legislature in these two clauses, is contested by the argument, and produces the principal question agitated in the case.
It is contended on the part of the Attorney General, that the trial therein alluded to, is to be by the court; and bn the part of the defendant, that the trial is to be by a jury. ■
The first clause introduces the same amendment to the . act of 1741, producing the variation in the practice, or mode of proceeding in this class of cases; pointing out the new mode or course, and the terms on which the defendant shall be entitled to the benefit of it, and the court be authorized to grant it. An affidavit is required. The reason of this no doubt was, that the then usual course of proceeding in such cases, which had been practised for nearly a century, should not upon suggestion merely be interrupted and broken in upon, without a proper guard against its abuse. An affidavit was thex-efore required.
It was also as a further security against evasion, to be made by him who had the best means of knowing the truth, the person accused: and it was to be written and filed, that, if false, it might furnish ready and plain evidence on an indictment for perjury. These were the checks the. Legislature imposed upon the party against evasion, and constituted on his part the terms authorizing the agency of the court. This agency was, first, the judgment of the court upon the matter in the affidavit, whether sufficient or not to entitle the party defendant to the benefit of this clause; that is, to have an issue made for the purpose of trying the truth of the charge. The face of the affidavit was the sole directory to the court in this respect. This was its office: it was clearly to set *102 forth, that justice required an issue to be made. If it accomplished this, then the further agency of the court was required to make an issue, the matter and form of which would of course be dependent upon the facts disclosed by the affidavit, guided by a view to its object; that object was, the truth or falsehood of the charge.
From this view of this clause, I am led to this construction, that the Legislature intended these two things to be done, (on the court being satisfied upon the matter contained in the affidavit, that justice required them to act further:) 1st. That an issue should be made by the court, predicated upon the matter set forth in the affidavit of the defendant: And, 2d. That this issue, the result of which is to ascertain the truth or falsehood of the fact charged, should be tried by a jury. I have been induced to adopt this construction as the true meaning of the Legislature, for the following reasons: 1st. From the natural and obvious tendency of the expression producing this result upon my mind. 2d. From the diction, or words used in this clause, having had a certain, unequivocal meaning attached to them. Thus, the word “ issue,” when it has reference to fact, has at the same time always reference to a jury trial; and the expression “issue to be made,” “issue to be joined,” and similar expressions, or diction, have the same reference: an instance of the first is to be found in the act of 1801, ch. 6, sec. 62; and of the last in the act of 1817, ch. 199, sec. 3. 3d. From the rulés laid down for the construction of statutes, suppose it to be doubtful upon the face of this clause, whether the Legislature intended the trial of the issue to be by the court or by the jury, it then becomes necessary to have recourse to those rules. In C. Ba. Abr. 323, 324, are to be found those applicable to the present point. The one cited from 11 Modern, is in these words: “In all doubtful matters, and where the expression is in general terms, statutes are to receive such a construction as may be agreeable to the rules of the common law in cases of this nature; for statutes are not presumed to make any alteration in the common law, further or otherwise than the act expressly declares.” *103 Another rule taken from 1st Peer Wms. 252, 2 Inst. 148, 1 Saund. 240, and 10 Mod. 245, is, “The best construetion of a statute is to construe it as near to the rule and reason of the common law as may be, and by the course that observes .in other cases.” The issue in the present case, if one had been made, would have been an issue of fact, (which is not disputed.) The rule and course of the common law for its trial, is expressed with energy by the maxim, ad questionem legis respondet judex, ad questionem facti respondent juratores. This principle, that a jury is the best forum for the trial of disputed facts, is so intimately interwoven with our jurisprudence, that it prevails to a very great extent in courts of equity, though no juries are attendant there, and though it is with some inconvenience issues are transmitted from them to a court of law for trial. In a recent case, Lord Chancellor Eldon observes, that the jurisdiction in equity to try questions of fact without the aid of a jury, is to be exercised by a sound discretion; 3 Ves. and Bea. 42. If this principle prevails in those courts of equity from which we derive our knowledge of the principles and practice of equity, and when it is not supported by legislative interposition, would it not be a violence offered to the principle, to say that here it existed with less vigor in our system and courts of equity, when it has not only been recognized, but enforced by express statutory enactment? Thus,in the act of 1782, c. 11, for the establishment of a court of equity after the revolution, by section 3d it enacted, “ that all matters of fact that shall come in issue between the parties, shall be determined by a jury in the presence of the court, as in trials at law,” &c. And after the organization of the Supreme Court, in giving to it exclusive equity jurisdiction in 1811, by ch. 72, sec. 4 of that year, a provision is made for the trial of facts. In sec. 8, it is enacted, “ That when it shall be necessary to ascertain any fact in the trial of any suit in chancery, the said court of Errors and Appeals shall have the issues made up, and direct them to the circuit court, &c. &c. which circuit court shall proceed to impannel a jury for the trial of said issues of fact,” &c.
*104 Thus we see that the trial of disputed facts, by the jury, and not by the could, is not only congenial to proceedings in equity as well as to proceedings at law, and enforced and secured by statutory provisions, excluding the official capacity of a court for that purpose, but we have instances in our statute book, of the same sedulous care by the legislature, of preserving the proper functions entire, separate and apart between court and jury, even in particular jurisdictions enacted by special acts of Assembly, and when the court is directed to proceed in a summary way, without pleadings in writing, still the intervention of a jury is made necessary for the finding of facts, as in caveat cases, by the acts of 1806 and 1807. In addition to the above, may be noticed the 5th sec. of the 5th article of the constitution, which is in these words, “the judges of the superior and inferior courts shall not charge juries with respect to matters of fact, but may state the testimony and declare the law.” This ingrafts the principle on the constitution, and both establishes and exhibits it a directory, not to be transgressed, either by the legislature in making laws, or by the judges in expounding them.
Having now stated my reasons for the construction of this act of Assembly, which I entertain, I will next proceed to show why, in my opinion, the construction contended for on the part of the attorney general, could not be the meaning of the legislature. The clause following the one observed upon, is cited on the part of the attorney general, and by the counsel on argument relied on in support of that construction. It is in these words, “whereupon it shall be the duty of the court in which such charge may be pending, to hear proof, and determine the matter as to right and justice may appertain.” This clause, it is insisted, gives the trial exclusively to the justices on the bench. My opinion is, that taking the two clauses together, which is necessary in forming a correct estimate of the import of the latter, the term court, in the latter clause, will be found not to be used by the legislature in its more limited and restricted sense, and *105 designating the justices of the court only, a part of the tribunal; but in its more general and more enlarged sense of court, comprehending within its purport, both the justices and jury, both being component parts oí the tribunal or court, by its constitution. So the circuit court in like manner, means the judge of the court, or in its more enlarged sense, both the judge and the jury, according to the context or cause of the subject matter in reference to which it is used. So here, in this act of 1822, the prior clause has directed an issue to be made, to try the truth of such charge; and the latter clause having directed the court to bear the proof, and determine, as to right and justice may appertain, the term, court, is to be taken in the sense adapted to the context or subject matter, to wit, m its general and more enlarged sense, and applying singula singulis, or each part to its proper functionary, the whole of the act is consistent, agreeable to the analogies of law, and in unison with the spirit of our constitution, and our acts of Assembly.
This is my judicial construction of the clause in question, relied on by the counsel on the part of the State; but there is a legislative construction also pf this kind of expression substantially the same, and indeed of nearly the very same words. This legislative construction may be adverted to, for the purpose, at least, oí showing consistency in the legislature with itself, and that it has not at one time, used expressions substantially the same, in a different sense, from what it has at another time, because the order of the parts of that expression in the sentence is somewhat changed or transposed. I shall cite the act - of 1807, ch. 17, sec. 1, as an instance of this. That act says, “it shall be the duty of said superior court, to proceed to determine the right of the cause in a summary way.” It may be asked here, by what means are they to determine? The question is answered by the legislature itself in what follows, “ without pleadings in writing, by empanneling and swearing a jury, for the finding of such facts as are material to the cause,” &c. Here the legislature show, that the expression, making it the duty of the *106 court to proceed to determine the right of the cause in 3 summary way, does not mean determination by a trial by the court alone, to the exclusion of the jury; and it is a much stronger expression in favor of the attorney general’s argument, than the expression of 1822, ch. 29. Let us compare it with the act of 1822, ch. 29, sec. 1. This last says, “whereupon, it shall be the duty of the court in which such charge may be pending, to hear proof and determine the matter as to right and justice might appertain.” Here it may be also asked, by what means are they to determine? The same question is also here answered by the legislature, in what has preceded, and is referred to and annexed to the part now cited, by the word whereupon, and is this, “by an issue to be made to try the truth of such charge,” which, in our law, invariably means trial by jury. Thus we see, that by inverting the order of expression in a sentence, the act of 1822, ch. 29, sec. 1, becomes on this point as plain as the act of 1807, ch. 17, sec. 1, and that trial by jury is the meaning of the legislature in the former.
I am of opinion therefore, with the 'plaintiff in error, on his first error assigned.
On the second error assigned, that the mother of the child should have been sworn in court, and her testimony not substituted by the affidavit, I concur with the opinion of my brethren. An issue if one had been made in this case, and predicated on the affidavit of the defendant below, must have been in direct opposition to her oath of filiation. The law in such case would not tolerate her, as its tendency and effect must necessarily be, to crimin-inate herself by shewing she was guilty of perjury.
But upon the face of this record there is another error, which although not noticed by the argument, yet, being matter of substance, the court is bound to notice; that is, that no issue was made in the case. The bill of exceptions states that the defendant moved the court to have the issue tried by a jury “ whether the said Goddard was the father of the illegitimate child,” which the court refused. The record shows, that this issue was not only not *107 tried by a jury, but that it was not made, or that issue to the same purport was made, or that any issue predicated on the import of the affidavit filed, was made, which should have been done. It may be asked, why should it be made and so appear to be, on the record, as it is implied that the court passed on the subject matter, though not set down on the record, and the defendant had the benefit of it, which is an equivalent.
It is answered, that an issue should be made, and the record what that issue is, as a matter absolutely necessary for the safety of the defendant, and for affording him that protection which the law intended to give him in such case. It should be made, that the parties may know how to direct their evidence to it, and know what evidence would be admissible, and what not. For neither the act of the Assembly, nor the reason of the thing, point to a singleness of matter for its foundation, that does not admit of variance. The matter of the issue is made by the act, dependent on the matter of the affidavit, which must clearly set forth that justice requires an issue to be made, to try the truth of the charge. This is a general requisition, and we can readily see without specifying particulars, that facts of a very distinct nature and kind, may show the falsity of the charge; facts having no connection whatever, or no relation to each other, except that of tending to the same result. I will simply hint at two classes of facts; those to prove an alibi, and those to prove impotence. A general issue, whether the father or not, could give no notice on the side of the Attorney General of the facts intended to be proved by the defendant; and yet the result in either would show the falsity of the charge, by showing the impossibility of its truth.
An issue, therefore, ought to be made, as well for the benefit of the other side, as. for the benefit of the defendant, and a day given for the trial, which must of course be dependent on circumstances. Again, an issue ought to be made to give either party the benefit of the laws of his country, one of which is, the review of a revising court for the correction of the court below. And this *108 objection lies as well to the case, where the trial is to be made by the court alone, as by the court and jury. The admission of improper testimony, or the rejection of pro-deprives the party of the benefit of the law: how is this error to be seen by the revising tribunal, without the issue actually made, and appearing totidem verbis on the record.
I think, therefore, the circuit court erred in not reversing the judgment of the county court, and that this court proceeding, &c. &c. ought to reverse the judgment of the circuit court, and give such judgment as the circuit court ought to have given, &c.